Respondent disbarred.

In the Matter of JAMES F. MAHAN, an Attorney, Respondent.

First Department, March 10, 1933.

*Einar Chrystie*, for the petitioner.

*Joseph G. Fenster*, for the respondent.

FINCH, P. J.   The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court of the State of New York, Third Department, in July, 1896.

By the petition herein the respondent is charged with professional misconduct in that he converted the moneys received as the result of two personal injury causes brought by him as attorney in behalf of two separate clients, in one of which the respondent also was alleged to have procured a forged indorsement of the name of his client upon a receipt and a draft given in settlement of the action.

The learned referee has duly reported, finding the respondent guilty as charged.

The matter now comes before this court, upon motion of the petitioner, for confirmation of said report and such other action as to this court may seem proper.

The facts as found by the referee and sustained by the record are, in brief, as follows: Respondent was retained by one Samuel Costigan in 1928 upon a contingent basis of fifty per cent of the amount recovered in an action for personal injuries. The defendant in said action was insured. The surety company undertook the defense of the claim. The plaintiff lived in Washington, D. C., and as he was about to leave the city the respondent obtained from him a general release in advance of settlement. During the absence of the plaintiff the respondent effected a settlement, procured his employee, Miss Stahlberg, to sign a receipt in the name of the plaintiff for the draft received from the surety company in settlement of the action and also in like manner to indorse this draft, upon the representation that the plaintiff had authorized the respondent to have her do so. The plaintiff denied any such authorization and this denial has been found to be the truth by the referee. The respondent deposited the draft so indorsed in his bank for collection on February 27, 1930, and it was paid in the regular course of business. Respondent thereafter concealed the facts of this collection from his client, the plaintiff, and, in response to his inquiries, sought to create the impression that the settlement had been delayed

because of delay in the settlement of other cases which the respondent had with the same surety company. Not until May 28, 1930, or three months after the receipt of the money, did the respondent make payment to his client.

In the second of the two personal injury cases the respondent was retained by one Goodwin to collect damages for him individually and as guardian *ad litem* for his infant son. This defendant was likewise insured, and the two cases were settled by the surety for a total payment of $1,900, of which $300 was for the claim of the parent and $1,600 for the claim of the infant. The settlement was made on February 28, 1930. These drafts were indorsed by Goodwin and delivered back to the respondent for collection. The respondent paid Goodwin the amount due on his claim as parent, but retained the amount received on the infant's claim, upon the ground that after collection he would be obliged, in order to insure joint control, to turn over the proceeds to the surety company which had furnished the bond of the guardian *ad litem*. From the time of receipt, to wit, the early part of March, 1930, until the spring of 1931, there follows a series of efforts upon the part of Goodwin to obtain the money to which he was entitled as guardian. In January, 1931, Goodwin employed a Washington attorney to assist him. Even then payment was not made by respondent until some four months later. Until respondent could make good the moneys which he had converted, he misrepresented and deceived Goodwin by leading him to believe that he had not yet received the moneys from the joint control of the surety, whereas, as a matter of fact, the respondent had the moneys during all this time in his sole control and for upwards of a year had applied them to his personal use. *Uberrima fides* is the measure of the fidelity owed by a lawyer to his client. In this the respondent was totally lacking. In February, 1931, respondent sent to Goodwin a check for $1,225, which was twice returned as uncollectible. In this case, as in the previous one, the respondent used the moneys of his client and was financially unable to make repayment upon demand.

The referee has also found, and such finding is not against the weight of the evidence, that the client's name was caused to be signed by respondent, without authority, to the receipt and to the check.

The only mitigating feature is that the money in both of these cases was paid over before actual complaint was made to the petitioner. Such mitigation, however, is offset by the records of this court, which show that the respondent was just emerging from an order of suspension heretofore issued by this court because of

professional misconduct in accepting the fruits of cases improperly solicited. Disciplinary orders are not only for the purpose of punishment for wrong done, but also should act as a deterrent not only to the profession in general but particularly it would seem to respondent.

The respondent should be suspended from practice for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MARTIN, O'MALLEY, SHERMAN and TOWNLEY, JJ., concur.

Respondent suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.